S. H. McWHIRTER v. LAWRENCE SWAFFER, and LAW-
RENCE SWAFFER v. S. H. McWHIRTER.

1. VENDOR'S IMPLIED LIEN.  Does not pass to assignee of purchase notes. Where a vendor conveys land by deed not retaining an express lien for the purchase money, no lien passes to the assignee of the purchase notes though it would be otherwise where no deed was given or an express lien retained.

Cases cited: Green v. Demoss, 10 Hum., 371; Thompson v. Pyland, 3 Head, 537.

McWhirter *v.* Swaffer.

2. Recission of Executed Contract. *Abatement in purchase money. What will justify.* To entitle a party to a recission of an executed contract or an abatement, the purchase money for defective title, he must make out a case of insolvency on the part of the vendor.

3. Same. *Breach of seisin not ground for.* While a breach of the covenant of seisin in a deed entitles the party aggreived to an action at law, it does not follow that he can have a recission of the contract in equity.

4. After acquired title of vendor. *When vendee required to take.* Although a vendee will not be compelled to take an after acquired title from a vendor who fraudulently concealed his want of title or falsely represented himself as having a good one at the time of the sale, and the contract, though executed, may be set aside. This rule does not apply to a case where the vendor holds a title bond for the land, and has fulfilled its conditions, thus entitling himself to a deed therefor and discloses these facts to his vendee.

Cases cited: Wood *v.* Norton & Johnson, 6 Hum., 309; Mullins *v.* Jones, 1 Head, 517.

5. Same. *When warranty confers upon vendee.* Where a party executes a warranty deed to his vendee, having at the time only an equitable title to the land, the warranty in such deed confers upon the vendee the after acquired title of his vendor if the execution of the deed conveying the after acquired title to the vendor has been properly proven.

6. Warranty covenant of. *Action not maintainable on. When.* A vendee in possession of land to which his vendor's title has never been perfected in the absence of fraud or insolvency, can entertain no action upon his warranty against defects of title.

7. Chancery Practice. *Enforcement of vendor's lien. Time allowed to perfect title. When.* In such a case where the vendor seeks to enforce his lien for the purchase money, the court will not order a sale of the land until the vendor has further time to perfect his title.

Case cited: Hurley *v.* Coleman, 3 Head, 265.

8. Same. *Same. Deraignment of title.* A vendor seeking the enforcement of his lien for unpaid purchase money on land sold having specifically met the charges of his vendee's cross-bill praying for the recission of the contract, is not bound to deraign his title further back than to the chancery deed under which he claims.

---

FROM M'MINN.

---

Appeal from a decree of the Chancery Court a

Athens, rendered at its November Term, 1872.    Hon. D. M. KEY, presiding.

W. H. BRIANT for McWhirter.

I. N. AIKEN for Swaffer.

. McFARLAND, J., delivered the opinion of the court.

This bill was filed by McWhirter to enforce his lien as vendor upon three town lots and a fraction in the town of Calhoun, McMinn county, sold by him to defendant Swaffer.

Swaffer files a cross bill praying for a recission of the contract, upon the ground of fraud and want of title to the property in the complainant at the time of his purchase. The Chancellor, upon the hearing, dismissed both bills without adjudging the merits, because the proper parties were not before the court, and both parties have appealed.

The sale was made on the 17th of February, 1870. McWhirter executed a deed conveying the lots Nos. 55, 56, 57, and a part of No. 25, all adjoining and constituting one property, to Swaffer. The deed contains covenants of seisin and general warranty. It shows that the price of the property was $2,000, for which four notes of $500 each were given, falling due respectively the 1st of November, 1870, 1871, 1872, and 1873; but the deed does not in terms retain a lien upon the property for the payment of these notes. The first of these notes was assigned and transferred by Swaffer to Wm. M. Seahorn before it came due.

The bill was filed by McWhirter when the second note became due, and an amended bill filed after the third note fell due. The bill prays to have his lien enforced as to three notes which he still holds. Swaffer's cross-bill alleges that the complainant had no valid title to the lots in question; that he never had any title but a tax title to part and a sheriff's deed to the remainder, and that these are so defective as to be valueless. He charges, upon information, that the title originally belonged to John McGhee and John L. McCarty, and that they are dead and their heirs under disability.

He charges that these defects of title were by McWhirter fraudulently concealed from him, and that McWhirter is insolvent; says he has offered to rescind the contract. The bill prays for a recission and general relief. The answer of McWhirter denies fully the charges of fraud and insolvency, and says he had a valid title to lots Nos. 57 and 25 by a decree of the Chancery Court, under which they were sold. That McGhee and McCarty had never owned these two lots, but had owned lots Nos. 55 and 56, but their title had been divested out of them by a decree of the Chancery Court, under which they were sold and vested in J. H. Eiffert, and that respondent Mc-Whirter had purchased these lots from Eiffert and paid him for them, and held his bond for title, but had no deed. That these facts were fully disclosed to Swaffer upon the sale to him, and that respondent agreed to procure Eiffert's title before the last note fell due, which was satisfactory to Swaffer, and he

avers that he has procured said deed from Eiffert. McWhirter also avers that he had been in peaceable adverse possession of the property since 1866, and that the defendant Swaffer has held ever since without eviction.

The Chancellor held that Seahorn, the assignee of the first note, was a proper party, and for this reason dismissed both bills.

It appears that Seahorn filed a bill seeking to assert a lien upon the lots in question for the amount of said note, but afterwards dismissed his bill so far as this relief was sought.

We think the Chancellor erred in dismissing the bills for the reason answered. It is well settled that where a vendor sells and conveys by deed without retaining in the deed an express lien for the purchase money that the vendor has for purchase money, does not pass to the assignee of note taken. It is different where no deed is made or an express lien is retained. See *Thompson* v. *Pyland,* 3 Head, 537; *Green* v. *Demoss,* 10 Hum., 371.

In this case the deed does not contain an express reservation of a lien. It says: "In consideration of $2,000, to be paid me in four instalments, viz.," giving the amount of the four notes and the dates they severally fall due. I have "bargained and sold," etc., but no further reference is made to the purchase money. The purpose to retain a lien may clearly be inferred from the fact the notes are described in the deed, but it cannot be said that the deed contains an express lien.

From this it results that Seahorn did not acquire any lien by virtue of the note assigned to him, and was not a necessary party. But if this were not so, we do not concede that it would have been proper to dismiss the bills upon the facts disclosed in this record.

Upon the question raised by the cross-bill, it being a case of executed contract, the party seeking a recission must make out a case of fraud or insolvency upon the part of his vendor, if he seeks an abatement of purchase money for defects of title. Upon the question whether McWhirter disclosed to Swaffer the true state of his title to lots Nos. 55 and 56, the proof is in direct conflict. The answer most solemnly avers that he did, and in this McWhirter supports his answer by his own deposition and by the testimony of his son and mother-in-law, while Swaffer, in his deposition, most vehemently denies it, and he is supported by another witness.

The onus being upon Swaffer to make out the fraud, we must hold, upon this state of the record, that he has failed to do so.

We agree, that if a vendor having no title, sell to an innocent vendee fraudulently concealing his want of title or falsely representing his title to be good, that this is a fraud for which the contract may be set aside, although executed, and in such case of actual fraud the vendee will not be compelled to take an after-acquired title: *Wood* v. *Norton & Johnson*, 6 Hum., 309; *Mullins* v. *Jones*, 1 Head, 517.

But this is not so if the vendor has a *bona fide*

equitable right to the land with a right to call for and obtain the legal title, as when he has bought the land from the true owner and paid him for it, and holds his bond for title, and these facts be disclosed to his vendee. So we have repeatedly held. It is true that if McWhirter did not have a title his covenant of seisin was broken and an action at law could have been maintained, but it does not follow from this that he has a right in equity to a recission. There was a demurrer to a cross-bill upon the ground of jurisdiction; and we must take the true state of facts in this cause to be as last stated, as the law does not presume fraud, and the complainant in the cross-bill has not sustained his allegations by a preponderance of proof.

2. We think the charge that McWhirter is insolvent is not sustained. The title to all the property claimed by him may not be clear or its value not so great as he assumes, but we think the weight of proof shows him to be solvent to the extent of any claim said Swaffer can justly have against him for breaches of the covenants in his deed as to these lots. The result then is, that this is not a case for recission.

Is there any ground there to resist the relief prayed for by McWhirter? We see no reason to doubt his title as to lots 57 and 26, he producing a decree vesting him with title, and shows by possession since 1860. The buildings were principally upon 57. Having met the specific charges of the bill, and the contract being executed, he is not bound to further deraign his title.

McWhirter *v.* Swaffer.

As to lots 55 and 56 he produces two deeds executed to him by Eiffert for both the lots in question. If the executions of these were. properly proven it would operate to vest Swaffer with the title of Eiffert by virtue of the warranty in McWhirter's deed, and he has also executed and tendered another deed since these deeds were made to him. These deeds purport to have been executed in the Cherokee Nation, but the authentication is not in strict accordance with the act of Congress, or any law to which we have been referred so as to entitle them to registration, although one of the deeds has been registered. Nor do we think the title of Swaffer as against Eiffert has been perfected by statute of limitation. He may have acquired a defensive right under the second section, but not a title under the first section. But the question is whether this defect of title is a good defense to McWhirter's right to enforce his vendor's lien. It is argued that he may sell such title as there is, but if the property fails to bring the amount due, complainant's right to have a personal judgment for the balance before perfecting the title would be a different question: *Hurley* v. *Coleman,* 3 Head, 265. Swaffer is still in possession, having never been evicted, and for this reason, in the absence of fraud or insolvency, can have no remedy against McWhirter upon his warranty against defects of title.

Upon the facts of this case we think it not proper not to pronounce a decree for a sale of the property at this time, but to remand the cause, with directions that further time be allowed; the complainant McWhir-

ter has further time to procure a proper authentication of the deed from Eiffert. The decree will be reversed and the cause remanded for the purpose indicated. The costs of this court will be divided.